IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

TAMMIE WENELL COLLINS,            )
                                 )
            Plaintiff,            )
                                 )
      v.                         )            CV 116-019
                                 )
NANCY A. BERRYHILL, Acting       )
Commissioner of Social Security  )
Administration,[1]               )
                                 )
            Defendant.            )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____


Tammie Wenell Collins appeals the decision of the Acting Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Social Security Insurance ("SSI") under the Social Security Act.  Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.      **BACKGROUND**

Plaintiff applied for DIB and SSI on October 23, 2012, alleging a disability onset date of May 1, 2007.  Tr. ("R."), pp. 223-41, 271.  Plaintiff was thirty-nine years old on her alleged disability onset date and was forty-four years old at the time the Administrative Law Judge

_____
[1]The Court takes judicial notice that on January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration.  Pursuant to Fed. R. Civ. P. 25(d), the Court **DIRECTS** the Clerk of Court to substitute Nancy A. Berryhill as Defendant in this case.

("ALJ") issued the decision under consideration. R. 50, 223, 230. Plaintiff initially applied for benefits based on allegations of the following conditions: cervical-lumbar stenosis and radiculopathy, fibromyalgia, disc disease, spina bifida, high blood pressure, high cholesterol, hypothyroidism, and heart problems. R. 275. Plaintiff completed ninth grade, and prior to her alleged disability, Plaintiff had accrued a relevant work history as a fast food worker, cleaner, and dairy worker. R. 50-52, 64-65, 276, 283-90, 354.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 148-58, 164-73. Plaintiff requested a hearing before an ALJ, R. 174-75, and the ALJ held a hearing on October 28, 2014. R. 45-70. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from John Finch, a Vocational Expert. Id. On November 17, 2014, the ALJ issued an unfavorable decision. R. 16-30.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since May 1, 2007, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe combination of impairments: lumbar and cervical degenerative disc disease status post cervical discectomy and fusion surgery; hypothyroidism; morbid obesity; pulmonary hypertension; mild mitral regurgitation; mild tricuspid regurgitation and depression. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[2] which means the ability to lift, carry, push and pull ten pounds occasionally and five pounds frequently, sit for six hours in an eight-hour day, with normal breaks, and stand and walk for two hours in an eight-hour day, with normal breaks. The claimant can frequently handle and finger bilaterally. She can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch and crawl. She must avoid concentrated exposure to extreme cold, extreme heat, extremes of humidity and vibration. She must avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation. The claimant must avoid workplace hazards like balancing on beams, unprotected heights and dangerous machinery of commercial grade. Finally, the claimant can perform simple, routine, repetitive tasks and can have superficial interaction with others. Thus, the claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including sorter, order clerk, and assembler (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2007, through November 17, 2014 (the date of the ALJ's decision) (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 21-31.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 2-7, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to properly weigh the medical opinion evidence of (a) Dr. Jay Berger,

---

[2]"Sedentary work" is defined as:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

Plaintiff's treating general practitioner, (b) Dr. John K.B. Afshar, Plaintiff's treating back surgeon, (c) Dr. Raheel Ahmed, a consultative examiner, (d) Dr. Shakoor Arain, Plaintiff's treating heart physician, (e) Dr. Robert Schilling, a state agency psychologist, (f) Dr. John Mihalovich, a consultative psychologist, (g) Dr. Bettye Stanley, a state agency medical consultant, and (h) Elizabeth Mowery, Plaintiff's friend; (2) improperly commented on Plaintiff's work history in analyzing her credibility; and (3) improperly failed to rely on VE testimony in response to hypothetical questions that included greater limitations than those found by the ALJ. See doc. no. 11 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 12 ("Comm'r's Br.").

## II.     STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is

"more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting <u>Bloodsworth</u>, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues the ALJ failed to properly evaluate the medical opinion evidence from numerous doctors and lay sources. <u>See</u> Pl.'s Br. Plaintiff also contends the ALJ improperly commented on Plaintiff's work history in analyzing her credibility and failed to correctly rely on VE testimony in response to hypothetical questions that included greater limitations that those found by the ALJ. <u>See</u> <u>id.</u> As explained below, the ALJ properly considered and weighed all the medical opinion evidence in formulating Plaintiff's RFC. Moreover, the ALJ appropriately

considered Plaintiff's work history as one factor in determining her credibility. Finally, the ALJ properly consulted VE testimony in determining whether jobs exist in significant numbers exist that Plaintiff could perform. Therefore, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A.    Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012).

Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining whether a claimant can return to his past relevant work, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

In categorizing the physical exertion requirements of jobs, the Commissioner classifies

jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R § 404.1567. Here, the ALJ

determined Plaintiff has the ability to perform less than the full range of medium work.

"Medium work" is defined as work that involves "lifting no more than 50 pounds at a time with

frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium

work . . . he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

In determining at step four in the sequential process whether Plaintiff's RFC for a

sedentary work would allow her to perform past relevant work, the ALJ consulted the VE in

accordance with 20 C.F.R. § 404.1560(b)(2), which provides as follows: "A vocational expert or

specialist may offer relevant evidence within his or her expertise or knowledge concerning the

physical and mental demands of a claimant's past relevant work, either as the claimant actually

performed it or as generally performed in the national economy." The VE identified Plaintiff's

past work as a fast food worker as unskilled, light work; Plaintiff's past work as a cleaner as

unskilled, light work; and Plaintiff's past work as a dairy worker as semi-skilled, heavy work. R.

64-65. The VE further opined a hypothetical individual with the Plaintiff's age, education, past

job experience, and physical limitations could not perform Plaintiff's past relevant work, but

identified sorter, order clerk, and assembler as other work the hypothetical individual could

perform and that exist in Georgia and the national economy. R. 66.

B.     The ALJ Properly Weighed the Medical Opinions.

Plaintiff contends the ALJ improperly weighed the medical opinions of eight different

doctors and lay people. As discussed herein, the ALJ correctly weighed all the medical opinions

in making his RFC determination and his evaluation of the medical opinions is supported by

substantial evidence.

## 1. Standard for Evaluating Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Crawford, 363 F.3d at 1159 (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes, was unsupported by the medical evidence, and was based primarily on claimant's subjective complaints); Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Sources that can provide evidence to establish an impairment include licensed physicians, but not physician's assistants. See Farnsworth v. Soc. Sec. Admin., 636 F. App'x 776, 783-84 (11th Cir. 2016); 20 C.F.R. § 416.913(a)(1).

Additionally, the Commissioner's regulations require the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5). However, SSR 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a non-examining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Moreover, state agency medical consultants' opinions may be entitled to greater weight than the opinions of treating or examining sources if they are supported by evidence in the record. See id.; Jarett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872-74 (11th Cir. 2011) (holding ALJ properly gave more weight to non-examining state consultants' opinions over treating physician's opinion); see also 20 C.F.R. § 404.1527(e)(2)(i), (iii).

Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 404.1527(d).

### 2. The ALJ Properly Attributed Minimal Weight to Dr. Berger's Medical Opinion as Contrary to Objective Medical Evidence.

Plaintiff claims the ALJ erred in discounting the medical opinion of Dr. Jay Berger,

Plaintiff's treating general practitioner, because treating physicians' opinions are generally given more weight. Pl.'s Br., pp. 7-10. Dr. Berger opined Plaintiff required a hand-held assistive device to ambulate independently, was not capable of performing fine and gross manipulations on a sustained basis, and had physical limitations due to a combination of her vertigo, lumbosacral and cervical stenosis, and back, neck, and extremities pain. R. 26, 686, 806-809. Dr. Berger further opined Plaintiff could lift and carry less than five to ten pounds; could sit, stand, or walk between fifteen and thirty minutes without interruption for a total of less than an hour in an eight-hour day; required rest period every one to two hours for fifteen to thirty minutes each; could never perform postural activities; and was limited in reaching, pushing, and pulling. R. 26, 806-809. Indeed, Dr. Berger opined "any physical activity" would place Plaintiff at risk for injury. R. 26, 808. Dr. Berger also anticipated Plaintiff would be absent three or more times a month as a result of her impairments, could not tolerate stress due to her history of major depression, and could not drive an automobile or operate equipment due to her opioid use. R. 26, 809. Finally, he found no evidence of Plaintiff malingering or exaggerating symptoms. Id.

The ALJ found Dr. Berger's opinions inconsistent with Dr. Berger's own treatment notes, contradicted by the medical evidence, and not supported by any other opinion. Id. Thus, the ALJ's decision to afford Dr. Berger's opinion little weight was supported by substantial evidence. See Lewis, 125 F.3d at 1440; Phillips, 357 F.3d at 1241.

Plaintiff essentially argues the ALJ, in finding the record "largely" supported his conclusion, picked and chose evidence that undermined Dr. Berger's opinion while ignoring the medical evidence pointing to the contrary. Pl. Br. pp.7-10. However, a review of the entire record shows Dr. Berger's opinions were in fact contrary to his own treatment records and other objective medical evidence.

10

Throughout his treatment notes, Dr. Berger repeatedly noted Plaintiff was in no acute distress, had a regular rate and rhythm with normal S1 and S2 and no murmurs, and had lungs that were clear to auscultation with no wheezes, rhonchi, or rales. R. 469, 478, 485-86, 491, 507, 509-10, 512, 515, 520, 525, 526-28, 530, 754, 814, 816, 818, 820, 822, 825, 828, 830. Dr. Berger further repeatedly noted Plaintiff had 5/5 motor strength in her extremities, no focal neurological deficits, normal reflexes, and negative Romberg testing. R. 469, 478-79, 485, 491, 508, 510, 512, 515, 520, 525, 526-28, 530, 754, 814, 816, 818, 820, 822, 825, 828, 830. Dr. Berger also repeatedly noted Plaintiff had full range of motion in her extremities with minimal or no edema and no clubbing, swelling, or deformity. R. 469, 479, 485, 491-92, 508, 510, 512, 515, 520, 525, 526-28, 530, 754, 814, 816, 818, 820, 822, 825, 828, 830.

For a few months after she was in a car accident, Dr. Berger noted Plaintiff showed reduced strength in one hand and reduced range of motion and tenderness in her neck. R. 507, 510, 512. However, before this time, Dr. Berger failed to mention any clinical abnormalities in Plaintiff's neck, back, or hands, and even stated in an October 19, 2010 treatment note that all of Plaintiff's past cervical exams had been normal. R. 510, 515, 517-18, 521-23, 525, 526-28, 530. After the initial visits regarding the car accident, Dr. Berger noted reduced range of motion and mild tenderness in Plaintiff's neck or back, positive straight leg raising, and reduced hand strength only twice, in June and September 2012. R. 486, 492. Other than these two instances, Dr. Berger regularly found full range of motion and no tenderness in Plaintiff's neck and back had, negative straight leg raising, and no decreased hand strength. R. 469, 473, 479, 670, 749, 754, 756, 814, 816, 818, 820, 822, 825, 828, 830, 831.

In addition to his treatment notes, the diagnostic studies Dr. Berger obtained revealed objective medical evidence contrary to his opinions. An ultrasound and sonography of Plaintiff's

lower extremities in July 2008 showed no stenosis, occlusion, or deep venous thrombosis, and an MRI of Plaintiff's brain in October 2010 was normal. R. 362-63, 510, 546. An MRI scan of Plaintiff's cervical spine in October 2010 revealed herniated discs at C5-6 that impinged on the spinal cord with mild stenosis and mild to moderate arthritis, but these abnormalities were clearly the result of her car accident and adequately addressed by surgery in November 2010. R. 510, 547. A November 2010 chest x-ray showed no acute pathology, and an ECG was normal. R. 540, 545. In early 2013, another ECG, a heptobiliary scan of Plaintiff's gallbladder, and an ultrasound and CT scan of her abdomen were all normal. R. 680-84, 706, 727. Ultrasounds performed in May 2013 showed no evidence of significant lower extremity arterial stenotic/occlusion disease, and a Doppler study revealed no evidence of deep venous thrombosis. R. 767, 773.

As the aforementioned treatment notes and diagnostic tests show, there is ample objective medical evidence contradicting Dr. Berger's medical opinions. Moreover, as for treatment, Dr. Berger merely prescribed medications, provided a few injections, and advised Plaintiff to exercise, lose weight, and stop smoking. R. 470-77, 479-84, 486-90, 492-97, 508, 510, 513, 516-18, 521-23, 525, 526-28, 530, 670-72, 754, 756-59, 814, 816, 818, 820, 822-23, 825-26, 828, 830-31. Such conservative treatment further supports the ALJ's decision to give little weight to Dr. Berger's opinions. See Nichols v. Comm'r, Soc. Sec. Admin., 679 F. App'x 792, 799 (11th Cir. 2017) (holding ALJ appropriately considered conservative treatment in weighing doctor's opinion); Fernandez v. Comm'r of Soc. Sec., 646 F. App'x 789, 792 (11th Cir. 2016) (holding conservative course of treatment inconsistent with doctor's opinion supported ALJ's decision to not give opinion substantial weight).

Accordingly, the ALJ's determination that Dr. Berger's opinion was to be awarded little

weight is supported by substantial evidence.

### 3.     The ALJ Properly Considered Dr. Ashfar's Treatment.

Plaintiff also claims the ALJ "completely disregarded" a May 17, 2012 treatment note from Dr. Ashfar, the treating physician for Plaintiff's back.  Pl. Br. p. 10.  In that treatment note, Dr. Ashfar noted "severe pain in [Plaintiff's] neck," "headaches [w]orsening over the past four months [that] have become an everyday problem," "daily" numbness and tingling in her right arm, "muscle spasms," dizziness when she looked right or left, and "pain in the neck . . . radiat[ing] down the front of the right arm down to the wrist."  R. 457.  However, viewing the May 17th treatment note in the context of Dr. Ashfar's entire treatment of Plaintiff, it is clear the ALJ considered Dr. Ashfar's treatment, including this treatment note, in formulating Plaintiff's RFC.

In November 2010, Dr. Ashfar performed surgery on Plaintiff's neck to alleviate problems from a car accident.  R. 420.  In an exam shortly before the surgery, Dr. Afshar noted that, although she had some lower extremity edema, Plaintiff's extremities had no clubbing or cyanosis.  R. 423.  Except for her left upper extremity, her sensation was intact, and he listed her strength as 5/5 in all muscle groups except for 4/5 strength in her right upper extremity.  Id.  He also noted her station and gait were normal.  Id.

At a follow up appointment to the surgery in January 2011, Plaintiff reported feeling 80% better and was quite pleased with the outcome of surgery R. 420.  Her motor skills were non-focal except for 4+/5 strength in her right grip and right branhioradialis, which had improved, and x-rays showed the surgical hardware from her surgery was in good position and there were no complications.  R. 420, 450.  By February 2011, Plaintiff reported doing quite well with significant improvement.  R. 440.  Although she displayed 20% reduction in range of motion in

her neck and mild spasm and tenderness, Dr. Ashfar noted no other neurological deficits or other abnormalities. Id. He also noted that x-rays demonstrated "excellent fusion" and good position of the surgical hardware. R. 440, 449.

After the February 2011 visit, Plaintiff did not return to Dr. Afshar until May 2012. R. 457-59. At this visit, Plaintiff complained of severe pain in her neck, worsening headaches, numbness and tingling in her right arm to right wrist, and muscle spasms. R. 457. At this exam, Dr. Afshar noted Plaintiff had normal range or motion and no spasm, and her straight leg raise testing was negative. R. 459. Furthermore, although Plaintiff displayed moderately compromised range of motion in her neck, positive L'Hermitte's and Spurling sign, and moderate muscle spasm, her neurological examination was normal. Id. Dr. Afshar noted that Plaintiff's sensation was intact, her strength was 5/5 in all muscle groups, and her station and gait were normal. Id. Dr. Afshar also noted that x-rays of Plaintiff's neck were normal. Id. He ultimately assessed Plaintiff with new onset neck pain and HA with right upper extreminty radiculopathy and ordered a CT scan and MRI scan of Plaintiff's neck, but the record does not indicate Plaintiff had the studies done or returned to Dr. Afshar. R. 457, 459.

As a whole, Dr. Ashfar's treatment notes show Plaintiff's back condition was progressively improving without significant medical intervention, and they support the ALJ's RFC finding. Accordingly, the ALJ's analysis of Dr. Ashfar's treatment notes was supported by substantial evidence.

### 4. The ALJ Properly Attributed Minimal Weight to Dr. Ahmed's Medical Opinion as Overly Optimistic of Plaintiff's Condition.

Plaintiff also argues the ALJ erred in discounting the medical opinion of Dr. Raheel Ahmed, a consultative examiner, for being "overly optimistic." Pl.'s Br., pp. 10-11. However, the ALJ's determination that Dr. Ahmed's opinion was overly optimistic actually benefited

Plaintiff. Indeed, the ALJ found Plaintiff had greater limitations than those opined by Dr. Ahmed. R. 21, 693.

Dr. Ahmed opined Plaintiff could stand and/or walk for four hours in an eight-hour workday and lift and carry twenty-five pounds frequently and fifty pounds occasionally. R. 693. The ALJ, however, limited Plaintiff to standing and walking only two hours in an eight-hour workday and lifting and carrying ten pounds occasionally and five pounds frequently. R. 21. The ALJ also imposed further limitations on Plaintiff's RFC which were not included in Dr. Ahmed's opinion, such as avoiding concentrated exposure to extreme cold, extreme heat, extremes of humidity and vibration, and moderate exposure to fumes, odors, dusts, gases, and poor ventilation. R. 21, 693. Thus, the ALJ's decision to give little weight to Dr. Ahmed only benefited Plaintiff. Even if the ALJ's determination was not supported by substantial evidence, which here it was, remand to require the ALJ to further explain why he gave little weight to Dr. Ahmed's opinion would be pointless. See Sanchez v. Comm'r of Soc. Sec., 507 F. App'x 855, 859 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.") (quoting Ware v. Schweiker, 651 F.2d 408, 412-13 (5th Cir. Unit A 1981)); East v. Barnhart, 197 F. App'x 899, 901 n.3 (11th Cir. 2006) ("any error in failing to address [doctor's] report explicitly in the ALJ's determination was harmless given that [doctor's] observations in the report were consistent with the ALJ's determination").

Accordingly, the ALJ's decision to give little weight to Dr. Ahmed's opinion will not be disturbed.

**5. The ALJ Properly Attributed Minimal Weight to Dr. Arain's Medical Opinion as Contrary to His Treatment Notes.**

Plaintiff claims the ALJ erred in discounting the medical opinion of Dr. Shakoor Arain, Plaintiff's treating heart doctor, because he does not clearly articulate why Dr. Arain's opinions were "overly pessimistic." Pl.'s Br., p. 11. Dr. Arain opined Plaintiff's heart condition was Class III, indicating marked limitations in physical activity, and less than ordinary activity would cause fatigue, palpitation, dyspnea or angina pain. R. 26, 777. Contrary to Plaintiff's contention, the ALJ clearly articulated that he gave Dr. Arain's opinions little weight because he found them inconsistent with Dr. Arain's treatment record. R. 26-27. Thus, the ALJ's decision to afford Dr. Arain's opinion little weight was supported by substantial evidence. See Lewis, 125 F.3d at 1440; Phillips, 357 F.3d at 1241.

When he first saw Plaintiff in May 2008, Dr. Arain noted clear lungs with normal breathing, a regular heart rate and rhythm with no murmurs, normal range of motion and no abnormalities except for some edema in her lower extremities, and normal strength and gait. R. 435-36. Dr. Arain noted no abnormalities in Plaintiff's neck or back. R. 435-36. When he examined Plaintiff again in June and July 2008, the results were similarly unremarkable. R. 867, 871. A stress test ordered by Dr. Arain in May 2008 came back "abnormal," but that testing also revealed good adenosine tolerance, normal ECG response to adenosine, medium minimally reversible myocardium perfusion defect/scar versus breast attenuation artifact, no significant wall motion abnormalities, and an ejection fraction of 65%, with Holter monitoring showing no significant cardiac arrhythmia. R. 432-33, 869, 872-75.

After these 2008 visits, Plaintiff did not see Dr. Arian again until May 2013, after she visited the hospital with chest pain. R. 763. Dr. Arian performed a cardiac catheterization on Plaintiff showing double vessel disease, for which Dr. Arian recommended medical

management.  R. 763, 766, 768-69.  In addition, a chest x-ray and ECGs in May and June 2013 were normal.  R. 770, 774, 805.  A stress test in July 2013 again came back "abnormal," but that testing also revealed normal ECG response, a medium fixed defect/scar, an ejection fraction of at least 55%, and no significant ischemia.  R. 803-04.  Furthermore, Holter monitoring in July 2013 was unremarkable, and an EKG July 2013 revealed low normal systolic function and only mild to moderate valve regurgitation.  R. 786-801.  As for treatment, Dr. Arian kept Plaintiff on medical management.  R. 781, 785.

Dr. Arian's clinical examinations of Plaintiff in May, June, and July 2013 were unremarkable.  R. 765, 780, 784.  Dr. Arain noted normal breathing, regular heart rhythm with normal S1 and S2 and no murmurs, normal pulses and no edema in Plaintiff's lower extremities, and normal strength, gait, and station.  R. 765, 780, 784.  He again made no mention of any abnormalities in Plaintiff's neck, back, or extremities.  R. 765, 780, 784.  Such unremarkable examination results remained unchanged in April, May, and September 2014.  R. 850, 854, 864.  Additional testing in 2014, including ECGs, an EKG, and a nuclear stress test, showed some deterioration in Plaintiff's left ventricular functioning, but Dr. Arian merely described Plaintiff's symptoms as atypical and continued her on medical management.  R. 851-52, 855-59, 865, 883-85.

As the aforementioned medical evidence shows, there is ample objective medical evidence contradicting Dr. Arain's medical opinions.  Throughout his treatment, Dr. Arain repeatedly noted Plaintiff's heart had no murmurs and regular rate and rhythm, and many other cardiovascular findings by Dr. Arain were similarly normal.  R. 435, 765, 780, 784, 850, 854, 864, 867, 871.  Some studies and testing by Dr. Arain, as discussed above, revealed some heart abnormalities, but other testing was normal, and Dr. Arain did not change his course of treatment

based on those tests.  R. 432-33, 763, 766, 768-70, 774, 805, 856-59, 869, 872-75, 883-85.

Moreover, as for treatment of Plaintiff's heart condition, Dr. Arain merely prescribed medications and lifestyle changes.  R. 781, 785, 851-52, 855-59, 865.  In addition, there are large gaps in treatment by Dr. Arain, indicating aggressive, continuous treatment was not needed. Such conservative treatment further supports the ALJ's decision to give little weight to Dr. Arain's opinions.  See Nichols v. Comm'r, Soc. Sec. Admin., 679 F. App'x 792, 799 (11th Cir. 2017) (holding ALJ appropriately considered conservative treatment in weighing doctor's opinion); Fernandez v. Comm'r of Soc. Sec., 646 F. App'x 789, 792 (11th Cir. 2016) (holding conservative course of treatment inconsistent with doctor's opinion supported ALJ's decision to not give opinion substantial weight).

Finally, Dr. Arain's opinion is inconsistent with the objective medical findings of Plaintiff's other treating physicians.  Dr. Berger, Dr. Afshar, and Dr. Ahmed, as well as Dr. Ingram, who treated Plaintiff for her back, and Dr. Mehanni, who treated Plaintiff for respiratory issues, all indicated their examinations of Plaintiff's cardiovascular system were unremarkable, with nothing to suggest Plaintiff had any marked limitations due to her heart condition.  R. 420, 423, 430, 440, 459, 463, 469, 478, 486, 491, 507, 510, 512, 515, 520, 525-28, 530-31, 670, 690, 754, 814, 816, 818, 820, 822, 825, 828, 830.  Such inconsistency with other physicians further supports the ALJ's decision to give little weight to Dr. Arain's opinion.  See Forsyth, 503 F. App'x at 893.

Accordingly, the ALJ's determination that Dr. Arain's opinion was to be awarded little weight is supported by substantial evidence.

### 6.    The ALJ Properly Attributed Minimal Weight to Dr. Schilling's Medical Opinion as Contrary to the Medical Record.

Plaintiff also appears to argue the ALJ erred in giving little weight to the medical opinion

of Dr. Robert Schilling, a state agency medical consultant.  Pl.'s Br. pp. 11-12.  Dr. Schilling

opined at the reconsideration level for Plaintiff's DIB claim there was insufficient evidence to

support a finding Plaintiff had mental limitations.  R. 27, 121.  However, Plaintiff's only mention

of Dr. Schilling in her brief is the following sentence: "The ALJ also gave little weight to the

opinion of Dr. Robert Schilling, as he found the medical records were insufficient to support a

finding that the claimant had mental limitations."  Pl.'s Br. p. 11.  It is hard to decipher what kind

of error Plaintiff contends the ALJ made in evaluating Dr. Schilling's opinion.

Regardless, the ALJ clearly stated his reasons for discounting Dr. Schilling's opinion.

Specifically, the ALJ noted Dr. Schillling did not consider how Plaintiff's physical impairments

impacted her mental functioning, as Plaintiff testified her inability to work made her depressed.

R. 27.  Accordingly, the ALJ's determination that Dr. Schilling's opinion regarding Plaintiff's

Title II application was to be awarded little weight is supported by substantial evidence.

### 7.    The ALJ Properly Attributed Great Weight to Dr. Milhalovich's Medical Opinion as Consistent with the Record.

Plaintiff also argues the ALJ erred in giving great weight to the medical opinion of Dr.

John Mihalovich, a consultative examining psychologist.  Pl.'s Br. pp. 11-12.  Plaintiff appears

to argue that as a psychologist and not a medical doctor, Dr. Mihalovich's opinion was entitled to

less weight than the other medical sources.  However, psychologists are included with licensed

physicians as acceptable medical sources.  See 20 C.F.R. §§ 404.1513(a), 416.913(a); see also

Farnsworth v. Soc. Sec. Admin., 636 F. App'x 776, 783 (11th Cir. 2016) (noting regulations

include licensed physicians and psychologists as acceptable medical sources).

Moreover, Dr. Mihalovich's opinion is supported by his own objective findings and is

consistent with the record as a whole, as Plaintiff concedes.  R. 760-62; Pl.'s Br. p. 12 ([Dr.

Mihalovich's opinion is substantiated by the records of Dr. Jay Berger. . . .")  The ALJ

incorporated Dr. Mihalovich's well-found opinions that Plaintiff suffers from depression yet could perform simple, routine, repetitive tasks and could have superficial interaction with others into his Step Two and RFC analysis.  R. 18, 21.

Accordingly, the ALJ's determination that Dr. Mihalovich's opinion was to be awarded great weight is supported by substantial evidence.

### 8. The ALJ Properly Attributed Partial Weight to Dr. Stanley's Medical Opinion as Consistent with the Medical Evidence.

Plaintiff also argues the ALJ erred in giving partial weight to the opinion of Dr. Bettye Stanley, a state agency medical consultant.  Pl.'s Br. p. 12.  However, the ALJ's determination regarding Dr. Stanley's opinion actually benefited Plaintiff.  Indeed, the ALJ found Plaintiff had greater limitations than those opined by Dr. Stanley.  R. 21, 134.

Dr. Stanley opined Plaintiff could stand and/or walk for 4 hours in an 8-hour workday and lift and carry twenty pounds frequently and ten pounds occasionally.  R. 134.  The ALJ, however, limited Plaintiff to standing and walking only two hours in an eight-hour workday and lifting and carrying ten pounds occasionally and five pounds frequently.  R. 21.  The ALJ also imposed further limitations on Plaintiff's RFC which were not included in Dr. Stanley's opinion, such as avoiding concentrated exposure to extreme cold, extreme heat, extremes of humidity and vibration, and moderate exposure to fumes, odors, dusts, gases, and poor ventilation.  R. 21, 134.  Thus, the ALJ's decision to give partial weight to Dr. Stanley only benefited Plaintiff.  Even if the ALJ's determination was not supported by substantial evidence, which here it was, remand to require the ALJ to further explain why he gave partial weight to Dr. Stanley's opinion would be pointless.  See Sanchez v. Comm'r of Soc. Sec., 507 F. App'x 855, 859 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that

would alter the ALJ's decision.") (quoting <u>Ware v. Schweiker</u>, 651 F.2d 408, 412-13 (5th Cir. Unit A 1981)); <u>East v. Barnhart</u>, 197 F. App'x 899, 901 n.3 (11th Cir. 2006) ("any error in failing to address [doctor's] report explicitly in the ALJ's determination was harmless given that [doctor's] observations in the report were consistent with the ALJ's determination").

Accordingly, the ALJ's decision to give little weight to Dr. Stanley's opinion will not be disturbed.

### 9. The ALJ Properly Attributed Partial Weight to Elizabeth Mowery's Opinion as Inconsistent with the Objective Medical Evidence and Other Medical Opinions.

Plaintiff also argues the ALJ erred by improperly discounting Elizabeth Mowery's testimony because she was not medically trained to make exacting observations regarding medical signs and symptoms or the frequency or intensity of medical conditions, and because of her close relationship with Plaintiff. Pl.'s Br. pp. 12-13.

However, contrary to Plaintiff's assertion, the ALJ's consideration of Ms. Mowery's testimony was consistent with SSR 06-3p, which was in effect at the time of the ALJ's decision, allowing an ALJ to consider the relationship between the source and the claimant, the source's qualifications, whether the source's opinion is consistent with the other evidence, and any other factors in evaluating opinions from non-medical sources. <u>See</u> SSR 06-3p, 71 Fed. Reg. 45, 593-03 (Aug. 9, 2006), *rescinded* 82 Fed. Reg. 57, 15263 (Mar. 27, 2017). The ALJ properly noted Ms. Mowery's lack of medical training and potential bias. Moreover, the ALJ properly noted Ms. Mowery's statements, like Plaintiff's subjective complaints of disabling pain and other symptoms, are inconsistent with the objective medical evidence and other evidence in the record. R. 27.

Accordingly, the ALJ's decision to afford Ms. Mowery's opinion some weight was

supported by substantial evidence.

In sum, the ALJ's weighing of the medical opinions is supported by substantial evidence.

**C.     The ALJ Properly Considered Plaintiff's Work History in Evaluating Her Credibility.**

Plaintiff also contends the ALJ improperly commented on her work history in making his credibility determination.  Pl.'s Br. pp. 13-14.  In making his credibility determination, the ALJ made the following comments regarding Plaintiff's work history:

> The claimant does not have the type of work history that enhances her allegations. Working full-time for a full year for the minimum wage in effect since 1997 results in more than $10,000 in annual income.  The claimant has earned that much once in her life (Exhibit 5D).  An award of benefits would certainly be more than competitive with what she usually earned when she was working, particularly since the benefits would probably be tax free, she would be relieved of the rigors, expenses and aggravations of working, and she would receive medical benefits.  Such a scenario could motivate the claimant, either consciously or subconsciously, to exaggerate her symptoms[.]

R. 28.

It is well established that an ALJ may consider a claimant's work history in evaluating her credibility.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374786, at *5; Lafond v. Comm'r of Soc. Sec., No. 6:14-CV-1001-ORL-DAB, 2015 WL 4076943, at *3 (M.D. Fla. July 2, 2015) ("Pursuant to the SSA regulations and Rulings, the claimant's work history and the consistency of her subjective statements are also relevant to the credibility determination.").  Furthermore, the ALJ also considered other relevant evidence, including the consistency of her complaints with the medical record and compliance with doctors' recommendations, in assessing her RFC and determining that Plaintiff's subjective complaints of disabling symptoms and limitations were not entirely credible.  R. 25.  Thus, the ALJ did not improperly consider Plaintiff's work history, as it was only a small part of a much larger credibility determination.  Although Plaintiff may disagree with the conclusion reached by the

ALJ, the credibility determination is supported by substantial evidence.

**D.      The ALJ Properly Relied on the VE's Testimony to Determine Plaintiff Was Not Disabled.**

Plaintiff also argues the ALJ erred at step five by posing a hypothetical question to the VE that failed to properly account for concentration limitations. Pl.'s Br., pp. 14-15. As explained below, substantial evidence supports the ALJ's finding that Plaintiff can perform the requirements of unskilled, sedentary work as identified by the VE.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

Furthermore, although the Eleventh Circuit has noted other circuits have rejected the contention that simply limiting a hypothetical question to simple, routine tasks or unskilled work may not generally account for limitations in concentration, persistence, and pace, there are other ways to account for such limitations in formulating a valid hypothetical for the VE. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180-81 (11th Cir. 2011).

> [W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for these limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. at 1180; see also Lee v. Comm'r, Soc. Sec. Admin., 551 F. App'x 539, 541 (11th Cir. 2014);

Washington v. Soc. Sec. Admin., Comm'r, 503 F. App'x 881, 883 (11th Cir. 2013).

Here, Plaintiff essentially argues the ALJ incorrectly determined her RFC, and therefore the hypotheticals proposed to the VE would eliminate all competitive jobs for Plaintiff. Pl.'s Br., pp. 14-15. However, the ALJ's RFC determination was supported by substantial evidence, as discussed at length above, and it is clear the ALJ's hypothetical properly accounted for all those limitations.

The first hypothetical posed by the ALJ asked as follows:

> Now, let's assume we have a person 37 to 44 years old. They have a 9th grade education. They have past work experience as you identified. Assume they can lift, carry, push, pull 10 pounds occasionally, 5 pounds frequently. They can sit with normal breaks for six of eight hours a day; stand and walk with normal breaks for two of eight hours a day. They can frequently handle and finger bilaterally. They can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. They can occasionally stoop, kneel, crouch, and crawl. They must avoid concentrated exposure to extreme cold, extreme heat, extremes of humidity, vibration, and even moderate exposure to fumes, odors, dust, gases, poor ventilation as well as avoiding exposure to hazards, such as dangerous balancing, such as on beams, unprotected heights, dangerous machinery, and commercial driving. They can perform simple, routine, repetitive tasks; and they can have superficial interaction with others.

R. 65. The VE opined those limitations would prevent Plaintiff from performing any past relevant work but did identify three sedentary, unskilled jobs that exist in the regional or national economy that Plaintiff could perform: sorter, order clerk, and assembler. R. 66.

In his hypothetical, the ALJ included all the limitations he found Plaintiff to have in his

RFC determination. R. 21, 65. As discussed at length, the ALJ's RFC determination is supported by substantial evidence. *See* *supra* Part III.B., C. Plaintiff cannot bootstrap her challenge of the ALJ's RFC determination into a challenge of his consideration of VE testimony. It is clear that the ALJ's hypothetical accounted for all Plaintiff's limitation.

In sum, in presenting his hypotheticals to the VE, the ALJ properly included all limitations in Plaintiff's RFC. R. 21. Because the hypothetical presented to the VE, upon which the ALJ relied to find Plaintiff was not disabled, accurately and comprehensively reflected Plaintiff's characteristics, the ALJ's reliance on the VE testimony was proper. <u>McSwain</u>, 814 F.2d at 619-20; <u>Pendley</u>, 767 F.2d at 1562-63.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 1st day of August, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA